# **EXHIBIT A**

# Commonwealth of Massachusetts
### THE TRIAL COURT
### SUPERIOR COURT DEPARTMENT

**SUFFOLK, ss**

|  |  |
|---|---|
| JOSE M. MARTINEZ HERNANDEZ a/k/a JOSE MARTINEZ, | |
| PLAINTIFF | DOCKET NO.: 2184CV020682 |
| v. | |
| CASA NUEVA VIDA, INC., MANUEL DURAN a/k/a MANUEL R. DURAN a/k/a MANNY DURAN a/k/a MANUEL DURAN OVIEDO, LISA MORALES, JAMES COTE, ALBA ALVAREZ, and DEVORAH PIMENTEL, | |
| DEFENDANTS | |

## SECOND AMENDED COMPLAINT AND JURY DEMAND

### PARTIES

1.   Plaintiff, Jose M. Martinez Hernandez a/k/a Jose Martinez (*hereinafter*, "Mr. Martinez" or "Plaintiff"), is an individual residing at 20 Creighton Street, Apt. 1, Jamaica Plain, Massachusetts 02130.

2.   Defendant, Casa Nueva Vida, Inc., (*hereinafter*, "CNV" or "Defendant"), is a Massachusetts nonprofit corporation incorporated under the laws of the Commonwealth of Massachusetts with an address of 53 Glenn Road, Jamaica Plain, Massachusetts 02130.

3.   Defendant, Manuel Duran a/k/a Manuel R. Duran a/k/a Manny Duran a/k/a Manuel Duran Oviedo (*hereinafter*, "Mr. Duran") is an individual residing at 274 Day Street, West Roxbury, Massachusetts 02132, and was the President of CNV.

4.     Defendant, Lisa Morales (*hereinafter*, "Ms. Morales"), is the President of CNV.

5.     Defendant, James Cote (*hereinafter*, "Mr. Cote"), is a Director of CNV and was the Treasurer of CNV.

6.     Defendant, Alba Alvarez (*hereinafter*, "Ms. Alvares"), is the Treasurer of CNV.

7.     Defendant, Deborah Pimentel (*hereinafter*, "Ms. Pimentel"), is a CNV management employee who had management of the corporation under M.G.L. c. 149, § 148.

## JURISDICTION

8.     Jurisdiction lies in this Court under M.G.L. c. 218, §1 and §19.

9.     Venue is proper M.G.L. c. 223, § 1 because the acts or omissions that led to the allegations occurred in the County of Suffolk, Massachusetts.

10.    Plaintiff received a right to pursue private action letter from Massachusetts Attorney General's Office on September 10, 2021. Attached as Exhibit A.

## FACTS

11.    At all times relevant before March 1, 2021, Mr. Duran was the President of CNV.

12.    After March 1, 2021, Ms. Morales was the President of CNV.

13.    At all times relevant before March 1, 2021, James Cote was the Treasurer of CNV.

14.    At all times relevant before March 1, 2021, Ms. Morales held herself out as the Treasurer of CNV.

15.    After March 1, 2021, Alba Alvarez was the Treasurer of CNV.

16.    Since approximately late 2018, Ms. Pimentel has overseen payroll for CNV.

17.    Ms. Pimentel represented to Plaintiff that she was a director of CNV and had control over financial decisions including payroll.

18.    Ms. Pimentel performed the duties of Mr. Duran when he was on vacation or unavailable.

19.    On August 16, 2012, Mr. Martinez began working for CNV.

20.    Mr. Martinez worked as a Maintenance Laborer for his entire tenure with CNV.

21.    On January 24, 2014, Mr. Martinez's rate of pay was $26.00 per hour.

22.    On January 17, 2017, Mr. Martinez's pay rate increased to $27.25 per hour.

23.    On April 21, 2020, Mr. Martinez's pay rate increased to $31.75 per hour.

24.    On March 18, 2021, Mr. Martinez's pay rate increased to $35.00 per hour.

25.    On March 18, 2021, Mr. Martinez was listed as an "Overtime Exempt" employee.

26.    Mr. Martinez did not have hiring and/or firing authority at CNV.

27.    Mr. Martinez did not have any supervisory duties like scheduling or filling out payroll.

28.    Mr. Martinez spent all of his work hours performing maintenance and repair jobs.

29.    CNV is a 501(c)(3) organization with the stated purpose of providing temporary housing to homeless families with particular attention to the needs of Hispanic families.

30.    CNV owns and operates multiple multi-family residential buildings throughout Massachusetts.

31.    Mr. Duran, in his capacity as President of CNV, ordered Mr. Martinez to perform work on properties.

32.    Mr. Duran affirmatively misled Mr. Martinez to believe that CNV owned all properties which Mr. Martinez worked on as a CNV employee.

33.    Mr. Duran ordered Mr. Martinez to perform work as a CNV employee on properties which were not owned by CNV, including but not limited to:

       a.    2 & 4 Mark Street, Jamaica Plain, Massachusetts 02130

       b.    3 Mark Street, Jamaica Plain, Massachusetts 02130

       c.    7 Mark Street, Jamaica Plain, Massachusetts 02130

    d.      45 School Street, Roxbury, Massachusetts 02124

    e.      86, 88 Howland Street, Dorchester, Massachusetts 02121

    f.      126 Day Street, Jamaica Plain, Massachusetts 02130

    g.      Essex Street, Lawrence, Massachusetts 01841

34. Throughout Mr. Martinez's employment, Defendants affirmatively misled him as to his rights to receive overtime payment that had become due and payable.

35. Throughout Mr. Martinez's employment, Defendants failed to post and keep posted a notice explaining employee rights under the Fair Labor Standards Act (*hereinafter*, the "FLSA"), as prescribed by the U.S. Department of Labor's Wage and Hour Division, in conspicuous places throughout CNV's offices and/or properties where Mr. Martinez was employed so as to permit Mr. Martinez to observe readily a copy.

36. Mr. Martinez regularly worked over forty (40) hours per week.

37. At all relevant times before March 1, 2021, Mr. Duran instructed Mr. Martinez to record on his timesheets that he worked exactly forty (40) hours per week and/or the equivalent of eight (8) hours per day instead of the correct hours.

38. Up until the fall of 2020, Mr. Duran informed Mr. Martinez that CNV was in the process of establishing an overtime fund contingent upon funding from the Commonwealth of Massachusetts.

39. Mr. Duran knew that CNV had the funding to pay Mr. Martinez for overtime hours. CNV was unable to pay Mr. Martinez for overtime hours because Mr. Duran was fraudulently syphoning funds from CNV. Mr. Duran's multiple fraudulent schemes are documented in the <u>Commonwealth of Massachusetts v. Duran, et al.</u>, Suffolk Superior Court, Docket No. 2184-CV-02202.

40. Upon information and belief, Mr. Duran affirmatively misled Mr. Martinez to prevent him from seeking overtime and to conceal Mr. Duran's fraudulent activity.

41. In the fall of 2020, Mr. Duran informed Mr. Martinez that he would receive compensatory time for hours worked in excess of 40 per week.

42. Mr. Duran further provided Mr. Martinez with a CNV employee handbook containing a written overtime policy which indicated he would receive compensatory time for hours worked in excess of forty (40) per week.

43. Mr. Martinez does not speak English and immigrated from Cuba.

44. Mr. Martinez was not provided with Spanish translation of CNV employee documents.

45. Mr. Martinez did not receive remuneration in the form of compensatory time for overtime.

46. Mr. Martinez did not receive remuneration in the form of time and one-half for overtime.

47. In late 2020 or early 2021, Mr. Martinez approached Mr. Duran about his accumulated vacation, personal, and sick time.

48. Mr. Martinez was concerned that he would lose the accumulated vacation, personal, and sick time.

49. Mr. Duran informed Mr. Martinez that CNV could not pay out the accumulated vacation, personal, and sick time.

50. Mr. Duran informed Mr. Martinez that CNV could only pay out the accumulated vacation, personal, and sick time if Mr. Martinez worked on site.

51. For the pay period of January 7, 2021 to January 20, 2021, CNV paid Mr. Martinez 100 hours of accumulated vacation time.

52. Mr. Martinez did not take a vacation from January 7, 2021 to January 20, 2021.

53.   Mr. Martinez worked on site for CNV from January 7, 2021 to January 20, 2021.

54.   For the pay period of February 4, 2021 to February 17, 2021, CNV paid Mr. Martinez 80 hours of accumulated vacation time.

55.   Mr. Martinez did not take a vacation from February 4, 2021 to February 11, 2021.

56.   Mr. Martinez worked on site for CNV from February 4, 2021 to February 11, 2021.

57.   Mr. Martinez did take a vacation from February 12, 2021 to February 17, 2021.

58.   Mr. Martinez has not received wages for work performed during the weeks of January 7, 2021, January 14, 2021, and February 4, 2021.

59.   Mr. Duran promised Mr. Martinez that he would receive 150 hours of accrued vacation, personal, and sick time off when he returned from vacation on February 20, 2021.

60.   Mr. Duran provided written confirmation of his agreement to provide 150 hours of accrued vacation, personal, and sick time to Mr. Martinez and placed a copy of the written agreement in Mr. Martinez's personnel file.

61.   In or around February 2021, Mr. Duran admitted to Mr. Martinez that Mr. Martinez had been working on properties owned by Mr. Duran—and not by CNV.

62.   In or around February 2021, Mr. Duran admitted to Mr. Martinez that Mr. Duran was being investigated by the Commonwealth of Massachusetts.

63.   After being informed of Mr. Duran's fraudulence and the Commonwealth's investigation, Mr. Martinez first realized that he may have been misled as to his rights to receive overtime.

64.   After this conversation, Mr. Martinez complained to Mr. Duran about CNV's failure to pay overtime and/or compensatory time.

65.   Mr. Martinez further complained to CNV employees about not receiving overtime and/or compensatory time.

66.   On or about March 1, 2021, Mr. Duran resigned from his position with CNV.

67.   After Ms. Morales became president of CNV, Mr. Martinez complained to Ms. Morales about not receiving overtime pay and/or compensatory time.

68.   In or around May 2021, Mr. Martinez became aware that Mr. Duran's written agreement providing Mr. Martinez 150 hours of accrued vacation, personal, and sick time was not in his personnel file.

69.   On or about May 4, 2021, Mr. Martinez's supervisor, Oscar Vega, requested that Ms. Morales investigate why Mr. Martinez had lost nearly 150 hours of accrued vacation, personal, and sick time.

70.   On or about June 4, 2021, Mr. Vega requested that Ms. Morales investigate why the written agreement had been removed from Mr. Martinez's personnel file.

71.   CNV has not investigated the missing accrued vacation, personal, and sick time, or reinstated the time.

72.   In or around June 2021, Mr. Martinez learned through counsel that it is unlawful under applicable state and federal laws for an employer to remunerate its employees in compensatory time for hours worked in excess of 40 per week.

73.   Thereafter, Mr. Martinez complained to Ms. Morales and other CNV agents about CNV's written overtime policy.

74.   Mr. Martinez, through discussions with Mr. Vega, believed that a city inspector, known to Mr. Martinez as "Barbosa," had fraudulently provided passing grades on multiple CNV buildings.

75.   On or about June 16, 2021 and July 9, 2021, Mr. Vega and Mr. Martinez asked Ms. Morales to investigate the fraudulent inspection and Barbosa.

76.   Mr. Vega and Mr. Martinez further complained to Ms. Morales that they had worked on properties not owned or rented by CNV.

77.   Mr. Vega and Mr. Martinez requested that Mr. Morales investigate whether they had been ordered to work on properties not owned or rented by CNV.

78.   After receiving these complaints, Ms. Morales demoted Mr. Vega from Maintenance Supervisor and, on July 13, 2021, terminated his employment.

79.   As a reason for Mr. Vega's termination, Ms. Morales indicated that Mr. Vega continued to try to contact state officials with complaints.

80.   As reason for Mr. Vega's termination, Ms. Morales indicated that Mr. Vega continued to complain about CNV's written overtime policy.

81.   Thereafter, Mr. Martinez repeatedly complained to Ms. Morales and other CNV agents of Ms. Morales' decision to terminate Mr. Vega's employment.

82.   Upon information and belief, at the time of Mr. Vega's termination, Mr. Duran was under investigation by the Massachusetts Attorney General's Office and the Massachusetts Inspector General's Office for alleged criminal misconduct he committed in his position as President of CNV.

83.   Upon information and belief, Ms. Morales knew of the criminal investigation at the time of Mr. Vega's termination.

84.   Upon information and belief, Ms. Morales terminated Mr. Vega's employment to discourage him or other employees from reporting CNV conduct to state officials and/or aiding the Commonwealth's investigation of CNV.

85. In or around the summer of 2021, Plaintiff participated in grand jury proceedings conducted as a result of the criminal investigation into Mr. Duran.

86. Mr. Martinez informed Ms. Morales and other CNV agents of his participation in the grand jury proceedings.

87. Throughout the summer and fall of 2021, Mr. Martinez repeatedly complained to Ms. Morales and other CNV agents of CNV's written overtime policy.

88. Ms. Morales instructed Mr. Martinez that he was required to abide by CNV's written overtime policy, which stated that employees would receive compensatory time for any hours worked in excess of 40 per week.

89. On September 9, 2021, Mr. Martinez filed the instant civil action through the Suffolk Superior Court electronic filing portal.

90. On September 17, 2020, counsel for CNV contacted Mr. Martinez' attorney concerning the instant civil action.

91. Throughout the summer and fall of 2021, Mr. Martinez continued to complain to Ms. Morales and other CNV agents about fraudulent state inspection reports of CNV properties.

92. Throughout the summer and fall of 2021, Mr. Martinez continued to complain to Ms. Morales and other CNV agents of his missing 150 hours of accrued vacation, personal, and sick time, and CNV's failure to pay him earned overtime.

93. On November 10, 2021, Ms. Morales issued Mr. Martinez a written warning based on his complaints.

94. In the written warning, Ms. Morales further stated that the failure of Mr. Martinez to comply with CNV policies would result in the termination of his employment.

95.   On November 16, 2021, CNV informed Mr. Martinez that his employment had been
      terminated, effective November 12, 2021.

96.   As reasons for Mr. Martinez's employment, CNV accused Mr. Martinez of hostile
      workplace conduct and insubordination in connection with his complaints regarding
      fraudulent state inspection reports of CNV properties, CNV's written overtime policy, its
      failure to pay him earned overtime, and its failure to reinstate his 150 hours of accrued
      vacation, personal, and sick time.

97.   Upon information and belief, Ms. Morales terminated Mr. Martinez's employment based
      on his aiding the state's investigation of Mr. Duran and/or CNV.

98.   Upon information and belief, Ms. Morales terminated Mr. Martinez's employment based
      on his complaints about fraudulent state inspection reports of CNV properties.

99.   Upon information and belief, Ms. Morales terminated Mr. Martinez's employment based
      on his complaints about CNV's policies and/or practices including its written overtime
      policy.

100.  Upon information and belief, Ms. Morales terminated Mr. Martinez's employment based
      on his asserting his rights to unpaid wages and/or overtime under applicable state and
      federal law.

101.  Upon information and belief, Ms. Morales terminated Mr. Martinez's employment based
      on his filing of the instant civil action.

<u>COUNT I</u>
**Failure to Pay Wages in Violation of Massachusetts Wage Claim Act M.G.L. c. 149, § 148
(All Defendants)**

102.   Plaintiff incorporates by reference the facts alleged in all preceding Paragraphs of this Complaint as if fully set forth herein.

103.   At all times relevant before March 1, 2021, Mr. Duran was the President of CNV.

104.   After March 1, 2021, Ms. Morales was the President of CNV.

105.   At all times relevant before March 1, 2021, James Cote was the Treasurer of CNV.

106.   At all times relevant before March 1, 2021, Ms. Morales held herself out as the Treasurer of CNV.

107.   After March 1, 2021, Alba Alvarez was the Treasurer of CNV.

108.   Since approximately late 2018, Ms. Pimentel was an individual with management of the CNV pursuant to M.G.L. c. 149, § 148

109.   The president, treasurer, and any individual having management of a corporation is individually liable as the employer pursuant to M.G.L. c. 149, § 148.

110.   Defendants are required by Massachusetts General Laws to pay any wages or remunerations.

111.   Defendants are required to pay time and one-half for hours worked over 40 hours in one week pursuant to M.G.L. c. 151, § 1A.

112.   Plaintiff regularly worked in excess of 40 hours per week.

113.   The Defendants failed to pay Plaintiff for hours worked over 40 hours per week.

114.   Defendants failed to pay wages to Plaintiff for work performed during the weeks of January 7, 2021, January 14, 2021, and February 4, 2021.

115.   As a result of the Defendants' failure to pay wages and/or overtime, the Plaintiff has suffered damages in an amount to be determined at trial.

## COUNT II

**Failure to Pay Wages in Violation of Massachusetts Wage Claim Act M.G.L. c. 149, § 148, Equitable Tolling**
**(Manuel Duran and CNV)**

116.   Plaintiff incorporates by reference the facts alleged in all preceding Paragraphs of this Complaint as if fully set forth herein.

117.   Defendant Manuel Duran, in his capacity as President of CNV, affirmatively misled Mr. Martinez concerning his right to wages and/or overtime pay.

118.   Defendant Manuel Duran, in his capacity as President of CNV, affirmatively misled Mr. Martinez concerning CNV's ability to pay overtime pay.

119.   Defendant Manuel Duran, in his capacity as President of CNV, affirmatively misled Mr. Martinez to induce Mr. Martinez into not pursuing overtime pay.

120.   Mr. Martinez relied on Mr. Duran's representation.

121.   In or around February 2021, after being informed of Mr. Duran's fraudulence and the Commonwealth's investigation, Mr. Martinez first realized that he may have been misled as to his rights to receive overtime.

122.   Pursuant to the doctrine of equitable tolling, Defendants are liable for unpaid overtime wages that accrued beyond the three-year statute of limitations for violations of the Massachusetts Wage and Overtime Laws.

123.   As a result of the Defendants' failure to pay wages and/or overtime, the Plaintiff has suffered damages in an amount to be determined at trial.

## COUNT III
### Failure to Pay Wages in Violation of the Fair Labor Standards Act 29 U.S.C. § 207 and § 215(a)(2)
### (All Defendants)

124.  Plaintiff incorporates by reference the facts alleged in all preceding Paragraphs of this Complaint as if fully set forth herein.

125.  At all times relevant before March 1, 2021, Mr. Duran was the President of CNV.

126.  After March 1, 2021, Ms. Morales was the President of CNV.

127.  At all times relevant before March 1, 2021, James Cote was the Treasurer of CNV.

128.  At all times relevant before March 1, 2021, Ms. Morales held herself out as the Treasurer of CNV.

129.  After March 1, 2021, Alba Alvarez was the Treasurer of CNV.

130.  Since approximately late 2018, Ms. Pimentel was an individual with management of CNV and operational control over its finances pursuant to the FLSA, 29 U.S.C. § 203(d).

131.  Any corporate officer having operational control of a corporation's covered enterprise, including its president and treasurer, is an employer under the FLSA, 29 U.S.C. § 203(d), and thus jointly and severally liable for unpaid wages.

132.  Defendants are required by the FLSA to pay any wages or remunerations.

133.  Defendants are required to pay time and one-half for hours worked over 40 hours in one week pursuant to 29 U.S.C. § 207.

134.  Earned overtime must be paid in cash or its equivalent—not compensatory time—pursuant to 29 U.S.C. § 207(a) and 29 C.F.R. § 531.27.

135.  Throughout his employment, Plaintiff regularly worked in excess of 40 hours per week.

136.  Defendants failed to pay Plaintiff for hours worked over 40 per week.

137. Defendants failed to pay wages to Plaintiff for work performed during the weeks of January 7, 2021, January 14, 2021, and February 4, 2021.

138. At all times relevant, Defendants misled Plaintiff as to his rights to overtime under the FLSA.

139. As of March 18, 2021, Defendants misclassified Plaintiff as an "overtime exempt" employee.

140. At all times relevant, Defendants maintained a written policy whereby CNV employees would receive compensatory time for any hours worked in excess of 40 per week.

141. At all times relevant before March 1, 2021, Defendants failed to keep full and accurate records of hours Plaintiff worked and underreported Plaintiff's hours on his paystubs.

142. At all times relevant, Defendants failed to post and keep posted a notice explaining the FLSA, as prescribed by the U.S. Department of Labor's Wage and Hour Division, in conspicuous places in every establishment where Plaintiff was employed so as to permit Plaintiff to observe readily a copy.

143. Pursuant to the doctrine of equitable tolling, Defendants are liable for unpaid overtime wages that accrued beyond the three-year statute of limitations for willful violations of the FLSA.

144. Defendants' violations of the FLSA were repeated, willful, and intentional.

145. As a result of the Defendants' failure to pay wages and/or overtime, the Plaintiff has suffered damages in an amount to be determined at trial.

## COUNT IV
**Breach of Contract**
**(CNV)**

146. Plaintiff incorporates by reference the facts alleged in all preceding Paragraphs of this Complaint as if fully set forth herein.

147. The Plaintiff had a contract with CNV for employment.

148. CNV breached the contract by failing to pay for all hours Plaintiff worked.

149. CNV owes Plaintiff an amount to be determined at a later date, plus statutory interest at twelve (12%) percent per annum, plus costs in connection with this lawsuit.

## COUNT V
**Breach of Duty of Good Faith and Fair Dealing**
**(CNV)**

150. Plaintiff incorporates by reference the facts alleged in all preceding Paragraphs of this Complaint as if fully set forth herein.

151. CNV had a duty imposed upon it to act in good faith and deal fairly with Plaintiff.

152. By the acts enumerated herein, including the failure to pay Plaintiff for all hours worked, CNV breached its duty of good faith and fair dealing to Plaintiff.

153. As a result of the CNV's breach of its duty of good faith and fair dealing to Plaintiff, Plaintiff has suffered and continues to suffer damages.

## COUNT VI
**Unjust Enrichment**
**(CNV)**

154. Plaintiff incorporates by reference the facts alleged in all preceding Paragraphs of this Complaint as if fully set forth herein.

155. By the acts enumerated herein, Plaintiff conferred a benefit upon the CNV.

156. CNV appreciated and knew of the benefit Plaintiff conferred upon it.

157.    Plaintiff expected to be paid for the labor he provided CNV.

158.    CNV accepted and retained the benefits Plaintiff conferred upon it, and it is inequitable for CNV to retain those benefits without payment to Plaintiff of the value of his services resulting in that benefit.

159.    As a result of the CNV's unjust enrichment, Plaintiff has suffered and continues to suffer damages in an amount to be determined at trial.

<u>COUNT VII</u>
**Retaliation in Violation of Massachusetts Wage Act, M.G.L. c. 149, § 148A**
**(CNV and Lisa Morales)**

160.    Plaintiff incorporates by reference the facts alleged in all preceding Paragraphs of this Complaint as if fully set forth herein.

161.    On multiple occasions in 2021, Plaintiff complained about CNV's failure to pay overtime.

162.    In 2021, Plaintiff complained about the loss of 150 hours of vacation time he had accrued.

163.    Vacation time are remunerations under M.G.L. c. 149, § 148.

164.    On multiple occasions in the fall of 2021, Plaintiff refused to sign and/or complained of CNV's written overtime policy.

165.    On September 8, 2021, Plaintiff filed the instant action.

166.    On or about November 10, 2021, Ms. Morales issued Plaintiff a written warning citing, in part, his refusal to sign and/or his complaints about CNV's written overtime policy and complaints about unpaid, earned overtime.

167.    On November 12, 2021, Ms. Morales terminated Plaintiff's employment.

168.    Upon information and belief, Plaintiff was disciplined and/or terminated in retaliation for opposing those CNV policies and/or practices which are in violation of M.G.L. c. 149, § 148 and M.G.L. c. 151, § 1A.

169. Upon information and belief, Plaintiff was disciplined and/or terminated in retaliation for seeking his rights to payment of wages under M.G.L. c. 149, § 148 and M.G.L. c. 151, § 1A.

170. Upon information and belief, Plaintiff was disciplined and/or terminated in retaliation for filing the instant civil action.

171. As a result of Defendants' retaliatory conduct, Plaintiff has suffered damages in an amount to be determined at trial.

**COUNT VIII**
**Retaliation in Violation of the Fair Labor Standards Act 29 U.S.C. § 215(a)(3)**
**(CNV and Lisa Morales)**

172. Plaintiff incorporates by reference the facts alleged in all preceding Paragraphs of this Complaint as if fully set forth herein.

173. On multiple occasions in 2021, Plaintiff complained about CNV's failure to pay overtime.

174. On multiple occasions in the fall of 2021, Plaintiff refused to sign and/or complained of CNV's written overtime policy, which provided that CNV employees would receive compensatory time for any hours worked in excess of 40 per week.

175. Earned overtime must be paid in cash or its equivalent pursuant to 29 U.S.C. § 207(a) and 29 C.F.R. § 531.27.

176. On September 8, 2021, Plaintiff filed the instant action.

177. On or about November 10, 2021, Ms. Morales issued Plaintiff a written warning citing, in part, his refusal to sign and/or his complaints about CNV's written overtime policy and his complaints about unpaid, earned overtime.

178. On November 12, 2021, Ms. Morales terminated Plaintiff's employment.

179. Upon information and belief, Plaintiff was disciplined and/or terminated in retaliation for opposing those CNV policies and/or practices which are in violation of the FLSA.

180. Upon information and belief, Plaintiff was disciplined and/or terminated in retaliation for seeking his rights to payments of wages under the FLSA.

181. Upon information and belief, Plaintiff was disciplined and/or terminated in retaliation for filing the instant civil action.

182. As a result of Defendants' retaliatory conduct, Plaintiff has suffered damages in an amount to be determined at trial.

**COUNT IX**
**Fraudulent Misrepresentation**
**(Manuel Duran)**

183. Plaintiff incorporates by reference the facts alleged in all preceding Paragraphs of this Complaint as if fully set forth therein.

184. Mr. Duran instructed Plaintiff to work as a CNV employee on properties that were not owned by CNV.

185. Mr. Duran had ownership interest in the properties.

186. Mr. Duran knew that the properties were not owned by CNV.

187. The fraudulent representation was made to induce Plaintiff to work on properties not owned by CNV without complaining about the work and working conditions.

188. The Plaintiff acted on the fraudulent representation as true.

189. As a result of acting upon the fraudulent representation, Plaintiff did not complain about the failure to pay overtime.

190. As a result of acting upon the fraudulent representation, Plaintiff has suffered harm in a to be determined amount.

**COUNT X**
**Wrongful Termination in Violation of Public Policy**
**(CNV)**

191.   Plaintiff incorporates by reference the facts alleged in all preceding Paragraphs of this
       Complaint as if fully set forth herein.

192.   Plaintiff in good faith complained about the violation of public safety regulations in CNV
       properties.

193.   Plaintiff in good faith complained about working on properties that were not owned by
       CNV.

194.   Upon information and belief, CNV agents were aware that the Massachusetts Attorney
       General's Office and Massachusetts Inspector General's Office had opened a criminal
       investigation of Mr. Duran which included investigating work done by CNV employees on
       properties owned by Mr. Duran.

195.   In or around the summer of 2021, Plaintiff participated in grand jury proceedings
       conducted as a result of the criminal investigation of Mr. Duran.

196.   Plaintiff informed Ms. Morales and other CNV agents that he was participating in such
       grand jury proceedings.

197.   On November 10, 2021, Ms. Morales issued Plaintiff a written warning.

198.   On November 12, 2021, Ms. Morales terminated Plaintiff's employment.

199.   Upon information and belief, Plaintiff was disciplined and terminated in retaliation for his
       complaints concerning violations of public safety regulations.

200.   Upon information and belief, Plaintiff was disciplined and terminated in retaliation for his
       complaints concerning working, in his capacity as a CNV employee, on properties that
       were not owned by CNV.

201.    As a result of CNV's decision to wrongfully terminate his employment, Plaintiff has

suffered damages in an amount to be determined at trial.

## PLAINTIFF DEMANDS A TRIAL BY JURY.

WHEREFORE, Plaintiff prays for the following:

1.   An award of damages in an amount to be determined at trial together with interest;

2.   An award of multiple damages equal to three times the damages under M.G.L. c 149, § 148 and M.G.L. c. 151, § 1A to be determined at trial;

3.   An award of multiple damages equal to two times the damages under 29 U.S.C. § 216(b) to be determined at trial;

4.   An award of back and future wages to be determined at trial;

5.   An award of emotional distress to be determined at trial;

6.   An award of compensatory or punitive damages to be determined at trial;

7.   An award of attorney's fees, interest and costs; and

8.   For such other relief as this Honorable Court deems just and equitable.

Dated: June 15, 2022

Respectfully submitted,
By the Plaintiff,
Through his Attorney

John Koury, Esq. (BBO# 694088)
Upper Charles Law Group, LLC
81 Hartwell Ave., #101
Lexington, MA 02421
(617) 600.7150 | P
(781) 444.2461 | F
jkoury@uclawgroup.com

## CERTIFICATE OF SERVICE

I, John Koury, Attorney for the Plaintiff, Jose M. Martinez Hernandez, do hereby certify that on this Wednesday, June 15, 2022, I served a copy of the foregoing pleading upon all parties of record to this action by email and first-class mail, postage prepaid to counsel as follows:

Michelle Peirce, Esq.
Brian Mulcahy, Esq.
John Wilusz, Esq.
Hinckley Allen
28 State Street
Boston, MA 02109-1775

Thomas Dwyer, Jr., Esq.
Christopher Hines, Esq.
Dwyer LLC
10 Derne Street
Boston, Massachusetts 02114

June 15, 2022

_____
John Koury